# CIRCUIT COURT OF THE CITY OF RICHMOND

Scottsdale Ins. Co.

v.

Magic Industries, Inc.

May 9, 1997

Case No. LX-3309-1

BY JUDGE MELVIN R. HUGHES, JR.

In this case, the plaintiff, Scottsdale Insurance Company, an out of state surplus line insurer, seeks to recover additional insurance premiums from the defendant, Magic Industries, Inc. After an audit, Scottsdale assessed Magic the additional premiums for insurance policies issued to Magic in 1991 and 1992. Magic refused payment and this suit followed. Magic has filed a Motion To Stay based on the provisions of § 13.1-758(A) contending that Scottsdale cannot maintain this action until it first obtains a certificate of authority from the State Corporation Commission (SCC).

There is no dispute that Scottsdale has not been issued such a certificate. There is also no dispute that Scottsdale is authorized by the SCC pursuant to § 38.2-4800, *et seq.* to issue surplus line insurance in Virginia and to collect premiums for the insurance it provides. Surplus line insurers are insurance companies that will write insurance covering risks that three Virginia licensed insurers have refused to provide. *See* §§ 38.2-4806 and 38.2-4811.

Here, an appropriately licensed insurance broker in Virginia obtained the Scottsdale policy which was later accepted in Virginia. So, according to the motion to stay, the question is whether Scottsdale, in order to enforce its alleged right to payment of premiums for insurance it is authorized to issue, must qualify to do business in Virginia pursuant to § 13.1-758(A). The court decides that Scottsdale can proceed without first obtaining a certificate of authority.

According to § 13.1-758(A):

> A foreign corporation transacting business in this Commonwealth
> without a certificate of authority may not maintain a proceeding in any
> court in this Commonwealth until it obtains a certificate of authority.

The General Assembly has otherwise set out a regulatory scheme for surplus line insurers in Virginia in § 38.1-4800 *et seq.* The section covering a certificate of authority although referring to a foreign corporation's inability to maintain an action without a certificate of authority does not contemplate a surplus line insurer in this respect because surplus line insurers have a whole other statutory scheme governing them. In no part of that separate scheme is it mentioned that a surplus line insurer must first have a certificate to qualify to do business in Virginia under § 13.1-758(A) before pursuing a claim for premiums due on a policy it is authorized to issue. Under § 38.1-4800 the Insurance Commission is authorized to issue an insurance broker a license to procure such insurance "from insurers not licensed to transact insurance business in this Commonwealth," which happened here. If surplus line insurers are required to first obtain a certificate of authority, as Magic maintains, then they would become Virginia insurers making the requirement that three Virginia insurers first decline the risk meaningless. Considering the express statutory scheme governing such insurers, it is highly unlikely that the General Assembly intended that Scottsdale could not bring an action seeking payment for the policy it provides unless and until it is authorized to do business in Virginia. In fact, the scheme contemplates that such insurers do not transact business in Virginia. Thus, Scottsdale, having complied with the requirements to issue its insurance has the right to enforce its contract without first becoming a Virginia insurer by obtaining a certificate of authority.

Accordingly, the Motion to Stay is denied.